Filed 12/22/25  P. v. Masila CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D086611 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FSB20001445) |
| KENEDDY MASILA , | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Bernardino County, Steve C. Malone, Judge.  Reversed in part and remanded for resentencing.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Elana Miller, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Keneddy Masila guilty of one count of rape of an unconscious or asleep person. (Pen. Code,[1] § 261, subd. (a)(4)(A).) The jury also made a true finding on two aggravating factors: (1) the victim was particularly vulnerable; and (2) the defendant took advantage of a position of trust or confidence to commit the offense. (Cal. Rules of Court, rule 4.421(a)(3), (11); § 1170, subd. (b)(2)). The trial court sentenced Masila to an upper term prison sentence of eight years.

Masila contends that (1) the trial court prejudicially erred by failing to instruct the jury on simple battery as a lesser included offense of rape of an unconscious or asleep person; and (2) the trial court violated Masila's Sixth Amendment right to a jury trial by imposing an upper term sentence based on aggravating factors not found true by the jury.

We conclude that Masila's second argument has merit. Based on the trial court's comments at sentencing, it appears that, when deciding to impose an upper term sentence, the trial court relied on aggravating factors that the jury did not find to be true. Further, the error was not harmless. Accordingly, we vacate Masila's sentence, and we remand for resentencing.

I.

FACTUAL AND PROCEDURAL BACKGROUND

In 2020, after a long day celebrating her birthday with friends at a winery and at dinner, Jane Doe got into the backseat of an Uber rideshare car driven by Masila to travel home from her friend's house. The ride started at 8:13 p.m. and was expected to last around 35 minutes. Jane Doe sent her boyfriend information that allowed him to track the progress of the Uber ride, and she talked to him on her cell phone at 8:32 p.m. while she was enroute.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

2

According to Jane Doe's testimony, she was "super sleepy" and so fell asleep in Masila's car after talking to her boyfriend. As Jane Doe explained, she woke up to find Masila on top of her in the backseat of the car. Her underwear was around her ankles, her breasts were exposed, and Masila's penis was inside her vagina. It was dark, and Masila had placed a cover on the car's front window.

When Jane Doe woke up, Masila asked her if she "liked it." Jane Doe replied, "What the hell?" Masila then said, "Give me your fuckin' address," moved to the driver's seat and drove Jane Doe a short distance to her apartment. By that time it was almost 10:00 p.m.

Jane Doe's boyfriend became concerned when the tracking information for the Uber ride stopped before the car reached their apartment. Jane Doe's phone had run out of battery, so he could not reach her by calling, but he drove around trying to find Jane Doe and then returned home. Jane Doe's boyfriend was present outside the apartment when Masila finally drove up with Jane Doe. Jane Doe was crying and terrified as she emerged from the backseat of the car. When Jane Doe told her boyfriend that Masila had touched her, her boyfriend ran toward Masila's car to confront him, but Masila sped away. Jane Doe and her boyfriend immediately called 911, and Jane Doe underwent a forensic medical examination that night. The examination found injuries to Jane Doe's genitals.

Police arrested Masila the next day. Masila told police that the Uber ride he gave to Jane Doe was normal and uneventful, and he specifically denied having sex with Jane Doe. However, analysis of swabs taken from Masila's penis subsequently showed Jane Doe's DNA, and analysis of swabs taken from Jane Doe's breast showed Masila's DNA. Masila was charged

3

with one count of raping an unconscious or asleep person.  (§ 261, subd. (a)(4)(A).)

At trial, Masila testified that he had a consensual sexual encounter with Jane Doe in the back seat of his car while she was fully awake, but that he lied to the police so he could keep driving for Uber.  Specifically, according to Masila, he and Jane Doe engaged in friendly conversation during the ride.  Then, at some point, he lost the GPS signal on his phone, so he pulled over to try to reconnect.  While he was pulled over, Jane Doe touched his shoulder and asked him to join her in the backseat "to have some fun."  He moved to the backseat and had sex with Jane Doe.  Masila testified, "[Jane Doe] was very awake when we were doing the activity.  And as I remember, she consented to what we had going on," and "played a big role in seducing me."  Not only was Jane Doe "very awake," according to Masila, but "she helped [him] undress."  As Masila stated, "I believed Ms. Jane Doe was very aware of the act, and she's the one who was leading me to do it."

The jury convicted Masila as charged.  It also made true findings on two aggravating circumstances.  The trial court sentenced Masila to the upper term of eight years in prison.

## II.

## DISCUSSION

A.   *The Trial Court Did Not Err in Failing to Sua Sponte Instruct the Jury With Simple Battery as a Lesser Included Offense*

We first consider Masila's contention that the trial court erred because it did not instruct the jury that the crime of simple battery was a lesser included offense of the crime of raping an unconscious or asleep person.

Although Masila did not request that the trial court instruct on simple battery as a lesser included offense, "[a] trial court has a sua sponte duty to 'instruct on a lesser offense necessarily included in the charged offense if

4

there is substantial evidence the defendant is guilty only of the lesser.' " (*People v. Shockley* (2013) 58 Cal.4th 400, 403–404 (*Shockley*).) " 'On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.' " (*People v. Smith* (2013) 57 Cal.4th 232, 240.) In this context, substantial evidence is " ' "evidence that a reasonable jury could find persuasive" ' " [citation], which, if accepted, ' "would absolve [the] defendant from guilt of the greater offense" [citation] *but not the lesser.*' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1215 (*Cole*).) "[T]he court need instruct the jury on a lesser included offense only '[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of the lesser offense." (*Shockley*, at p. 404.)

"To ascertain whether one crime is necessarily included in another, courts may look either to the accusatory pleading or the statutory elements of the crimes. When, as here, the accusatory pleading incorporates the statutory definition of the charged offense without referring to the particular facts, a reviewing court must rely on the statutory elements to determine if there is a lesser included offense." (*People v. Robinson* (2016) 63 Cal.4th 200, 207.)[2] " 'The elements test is satisfied if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that all legal elements of the lesser offense are also elements of the greater. [Citation.] In other words, " '[i]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' " ' " (*Robinson*, at p. 207.) "On appeal, we independently

_____

[2]  The information alleged that Masila "did unlawfully have and accomplish an act of sexual intercourse with Jane Doe, not his/her spouse, who was unconscious of the nature of the act by being unconscious and asleep, and this was known to the defendant(s)."

5

review whether a trial court erroneously failed to instruct on a lesser included offense." (*People v. Trujeque* (2015) 61 Cal.4th 227, 271.)

Case law is split on whether, under the elements test, simple battery is a lesser included offense of rape of an unconscious or asleep person. (Compare *People v. Hernandez* (2011) 200 Cal.App.4th 1000, 1006 [battery is not a lesser included offense of rape of an unconscious or asleep person] with *People v. Miranda* (2021) 62 Cal.App.5th 162, 176 [disagreeing with *Hernandez* and concluding that battery is a lesser included offense of rape of an unconscious or asleep person]; see also *People v. Mirabal* (2025) 115 Cal.App.5th 708, 727–728 [in the context of the similar crime of rape of an intoxicated person, agreeing with the People's concession that *Miranda* is the better reasoned authority, and concluding that "drawing an analogy with the analysis in *Miranda*, battery is a lesser included offense of rape of an intoxicated person"].)

Here, for the sake of argument, but without taking a position, the People accept Masila's contention that simple battery *is* a lesser included offense of rape of an unconscious or asleep person. As we will explain, we also need not, and do not, decide whether simple battery is a lesser included offense of rape of an unconscious or asleep person because, even if it is, the record does not contain substantial evidence from which a reasonable jury could absolve Masila of rape of an unconscious or asleep person but not the crime of simple battery. (*Cole, supra,* 33 Cal.4th at p. 1218.)

In 2020, the elements required to prove rape of an unconscious or asleep person were that: (1) the defendant had sexual intercourse with the victim; (2) the defendant was not married to the victim at the time; (3) the victim was unable to resist because she was unconscious of the nature of the act; and (4) the defendant knew the victim was unable to resist because she

6

was unconscious of the nature of the act.  (Former § 261, subd. (a)(4).)[3]  "A defendant may be convicted of rape of an unconscious person only if he had both knowledge of the person's unconsciousness and the wrongful intent to engage in an act of sexual intercourse with an unconscious person."  (*People v. Dancy* (2002) 102 Cal.App.4th 21, 37 *(Dancy)*.)  A person is "unconscious of the nature of the act" if the person was "incapable of resisting because" the person "[w]as unconscious or asleep" or "[w]as not aware, knowing, perceiving, or cognizant that the act occurred."  (§ 261, subd. (a)(4)(A).)[4]

The only element at issue during Masila's trial was whether Jane Doe was unconscious of the nature of the act.  At trial, Masila testified, and defense counsel argued, that Masila did not rape Jane Doe while she was unconscious of the nature of the act because, according to Masila, Jane Doe was fully awake during the incident.  Further, according to Masila, Jane Doe initiated the intimate activity by inviting Masila to join her in the back seat, helped Masila to undress, and consented to the sexual encounter.  Jane Doe, in contrast, testified that she was asleep until she woke up to discover that

---

[3]    Effective 2022, the Legislature amended the statute to remove the requirement that the defendant was not married to the victim.  (Stats. 2021, ch. 626, § 17.)

[4]    Although not relevant to Masila's prosecution, a person is also unconscious of the nature of the act if the person "[w]as not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraud in fact," or "[w]as not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraudulent representation that the sexual penetration served a professional purpose when it served no professional purpose."  (§ 261, subds. (a)(4)(C), (D).)

Masila was in the backseat, raping her. The jury's task was to decide between those two versions of events.

The crime of simple battery is defined as "any willful and unlawful use of force or violence upon the person of another." (§ 242.) Based on case law, " '*[a]ny* harmful or offensive touching constitutes an unlawful use of force or violence' under this statute. [Citation.] 'It has long been established that "*the least touching*" may constitute battery. In other words, force against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave a mark.' " (*Shockley, supra*, 58 Cal.4th at p. 404, italics added.) Analytically, it is useful to view the crime of battery as having "two elements: (1) a use of force or violence that is (2) willful and unlawful. The first element is satisfied by *any* touching. [Citation] The second element of battery, willfulness and unlawfulness, is satisfied by any touching that is harmful or offensive." (*Shockley*, at p. 408, (conc. & dis. opn. of Kennard, J.), italics added.)

Masila argues that the jury could have found him guilty of simple battery but not of rape of an unconscious or asleep person under two scenarios. However, as we will explain, due to Masila's testimony about what occurred during the incident, neither scenario is supported by substantial evidence.

First, Masila posits that a jury could find that Jane Doe was awake and aware during the incident, precluding a conviction for rape of an unconscious or asleep person, but the jury could still find that Masila touched Jane Doe in some kind of harmful or offensive manner while she was awake, satisfying the elements of simple battery. The jury was not presented with any evidence that would support such a scenario. Jane Doe testified that she was asleep during the entire incident. Thus, Masila's testimony was the only

8

evidence that Jane Doe was actually awake. But Masila did not describe any unwelcome touching that took place during the encounter. On the contrary Masila testified that Jane Doe initiated the encounter by asking him if he "wanted to have some fun," "consented to what we had going on," and did not offer "any type of resistance." Thus, no substantial evidence supports a finding that Jane Doe was awake, as described by Masila, but that Masila touched her in a harmful or offensive manner and thus committed battery.

Second, Masila posits the jury could have found that Jane Doe was unconscious during the incident but "in a state of light sleep," leading Masila to incorrectly believe she was awake. Under that circumstance, the elements of rape of an unconscious or asleep person would not be satisfied because Masila would not have "knowledge of the person's unconsciousness and the wrongful intent to engage in an act of sexual intercourse with an unconscious person." (*Dancy, supra*, 102 Cal.App.4th at p. 37). However, the touching still would have been harmful or offensive to Jane Doe because she did not consent to it, satisfying the elements of simple battery.

No evidence in the record would permit a reasonable juror to find that Jane Doe was actually in a state of light sleep while Masila touched her, but that, under the circumstances, Masila formed an incorrect belief that Jane Doe was awake. According to Masila's testimony, Jane Doe was "very awake," asked him to join her in the backseat, was "very aware of the act," helped him undress, and was "the one who was leading [him] to do it." Masila contends that the jury could conclude he believed Jane Doe was awake during the incident based on Jane Doe's testimony that Masila asked her whether she "liked it." We disagree. Jane Doe testified that Masila made that statement *after* she woke up, with Masila *already* having raped her.

9

Therefore, the statement does not support an inference that Masila believed Jane Doe was awake when he inserted his penis and committed the rape.

In sum, because no substantial evidence in the record would permit a reasonable jury to conclude that Masila was guilty only of the lesser included offense of simple battery but not the greater offense of rape of an unconscious or asleep person, the trial court had no sua sponte duty to instruct on simple battery as a lesser included offense.

B.     *Masila's Challenge to the Imposition of an Upper Term Sentence*

Next, Masila contends that his upper term sentence should be reversed because of the trial court's purported reliance on facts not found true by the jury beyond a reasonable doubt in imposing that sentence, in violation of his Sixth Amendment right to a jury trial.

1.     *Applicable Legal Standards*

We begin by setting forth the applicable legal standards. Section 1170, subdivision (b)(2) provides that, in selecting a term of imprisonment, a trial court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." Notwithstanding this rule, a "court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

Further, as relevant here, section 1170, subdivision (b)(6) provides that "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary

to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] . . . (B) The person is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." (§ 1170, subd. (b)(6).) Masila was a youth as defined by the statute, as he was 24 years old at the time of the offense. (§ 1016.7, subd. (b) ["A 'youth' for purposes of this section includes any person under 26 years of age on the date the offense was committed."].)

As our Supreme Court has explained, "current section 1170[, subd.] (b) operates in such a manner as to trigger the Sixth Amendment jury trial right with respect to every aggravating fact (other than a prior conviction) the trial court uses to justify an upper term sentence." (*People v. Lynch* (2024) 16 Cal.5th 730, 768 (*Lynch*).) "[U]nder the current statute a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Ibid.*)

"When a defendant is deprived of a jury trial on aggravating facts used to justify imposition of an upper term sentence, the reviewing court must apply the *Chapman* standard of review." (*People v. Wiley* (2025) 17 Cal.5th 1069, 1087 (*Wiley*), citing *Chapman v. California* (1967) 386 U.S. 18.) "Under that standard, 'a sentence imposed under . . . section 1170[, subd.] (b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute.' " (*Wiley*, at p. 1087.)

11

2.  *The Trial Court's Comments Indicate That It May Have Imposed an Upper Term Sentence Based, in Part, on Facts Not Found By the Jury Beyond a Reasonable Doubt*

The crime for which Masila was convicted is punishable by a sentence of three, six, or eight years. (§ 264, subd. (a).)

The jury made true findings on two aggravating circumstances: (1) the victim was particularly vulnerable; and (2) the defendant took advantage of a position of trust or confidence to commit the offense. (Cal. Rules of Court, rule 4.421(a)(3), (11).) Thus, based on the applicable law, the trial court was statutorily authorized to impose an upper term sentence by relying on those two aggravating factors found by the jury. (§ 1170, subd. (b)(2).) In their sentencing memorandum, the People advocated for an upper term sentence on that basis. At the sentencing hearing, after setting forth the reasons for its sentencing choices, the trial court imposed an upper term sentence.

Masila contends that the trial court's comments at the sentencing hearing show that, in deciding to impose an upper term sentence, it relied in part on aggravating factors in addition to the two factors that were found true by the jury. As a result, according to Masila, the trial court violated his Sixth Amendment right to a jury trial, as well as the statutory provision permitting imposition of an upper term only when based on circumstances in aggravation (apart from the fact of a prior conviction) that are found beyond a reasonable doubt. (§ 1170, subd. (b)(2).)[5]

---

[5] Because Masila did not object in the trial court to the use of aggravating factors not found true by the jury, the People contend that Masila has forfeited his appellate challenge. (See *People v. Scott* (1994) 9 Cal.4th 331, 356 ["complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal."].) The People's forfeiture argument fails because Masila's appellate argument is based on his right to a

The People disagree with Masila's understanding of what happened at the sentencing hearing. According to the People, the trial court "explicitly based its sentencing choice solely on the jury's finding [on the] two aggravating factors," and "there is no indication in this record that the trial court relied on any factors other than the two that had already been found true beyond a reasonable doubt by the jury." The People also argue, in the alternative, that even if the trial court did erroneously rely on additional aggravating factors, any error was harmless beyond a reasonable doubt.

As we will explain, having reviewed the reporter's transcript of the sentencing hearing, although the trial court's comments were confusing and ambiguous, our best reading of the trial court's comments is that the court based its upper term sentence, in part, on aggravating factors not found by the jury beyond a reasonable doubt.

To put the trial court's discussion in the proper context, we first look to the argument presented by the prosecutor at the sentencing hearing. In arguing for an upper term sentence, the prosecutor stated that the court had

---

jury trial under the Sixth Amendment. (*Lynch, supra*, 16 Cal.5th at p. 768) That right can be surrendered only by an *express* waiver, which did not occur here. (*People v. French* (2008) 43 Cal.4th 36, 47–48 [concluding that the "[d]efendant did not forfeit his Sixth Amendment right by failing to request a jury trial on the aggravating circumstances," and explaining that "[w]hen the constitutional right to jury trial is involved, we have required an express waiver even in cases in which the circumstances make it apparent that all involved—the trial court, the prosecutor, defense counsel, and the defendant—assumed that the defendant had waived or intended to waive the right to a jury trial."].) Accordingly, Masila's Sixth Amendment challenge is not forfeited. Moreover, even if forfeiture did apply, we would nevertheless exercise our discretion to reach the issue. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party."].)

13

to "weigh the factors in aggravation and mitigation per the California Rules of Court." In discussing the factors in aggravation, the prosecutor identified the two factors found by the jury, but she also pointed out that "California Rule of Court 4.421 . . . includes a provision for other factors the Court can consider or any other factors that reasonably relate to the defendant or the circumstances under which the crime was committed." The prosecutor then identified additional aggravating factors, namely, that Masila "inflicted both physical and emotional injury" on Jane Doe and her boyfriend, that Masila "was an active rather than a passive participant in the crime," and that Masila had "shown no signs of remorse for what he did" and "failed to take responsibility."

In delivering its ruling, the trial court first denied probation and then turned to a discussion of whether to impose a lower, middle or upper term sentence. The trial court stated, "The Court is now faced with the selection of the appropriate term of imprisonment[]. Penal Code Section 1170 [subdivision] (b)(1) and California Rule of Court 4.420(a) both state that 'when a judgment of imprisonment is imposed, the Court must in its sound discretion impose a sentence not to exceed the middle term, unless certain aggravating factors have been found true.' [¶] In this case, the jury was presented with verdict forms for aggravating factors. There were facts presented to the jury, and they found two aggravating factors true beyond a reasonable doubt. One, the victim was particularly vulnerable, and, two, the defendant took advantage of a position of trust or confidence. [¶] So the Court does have the discretion to impose the upper term if aggravating factors had been presented to the jury, and they find those factors true beyond proof beyond a reasonable doubt." The trial court then discussed and rejected the lower term presumption based on Masila's youth at the time of

14

the offense (§ 1170, subd. (b)(6)(B)), concluding that his youth was not a contributing factor to the crime.[6]

Having rejected the lower term presumption, the trial court stated, "So now the Court is in a position to weigh the aggravating circumstances and mitigating circumstances to apply choice of sentencing between three years, six years, and eight years.  So let's look at the -- we'll start off with Court Rule 4.421, circumstances and aggravation.  Factors in aggravation related to crime.  The victim was particular[ly] vulnerable and the jury made this finding. . . .  [¶]  Additionally, the jury found the defendant took advantage of a position of trust and confidence in committing the offense."  On the subject of the aggravating factors, the trial court further stated, "As the prosecution points out, when we look to aggravating factors, the Court can look to other factors that are not specifically provided.  Rule 4.421(c) states, 'Other factors that reasonably relate to the defendant.'  So the Court does note that the defendant has expressed no remorse, whatsoever, and that is a factor to consider, the absence of remorse for his actions, and the absence of any responsibility for his actions."  The trial court also noted that the evidence "does support some sort of sophistication and planning, in contrast to other similar offenses of this type."

With respect to the relevant mitigating factors, the trial court noted Masila's lack of a criminal record and his age of 24 at the time of the offense. It also acknowledged the information that Masila submitted regarding his employment and education, and the positive character reference letters on his behalf.

---

6     Masila does not challenge that ruling on appeal.

Then, after reviewing the facts of Masila's crime, the trial court made the following ruling: "Having weighed the factors in mitigation and the factors in aggravation, although there are factors in mitigation, the Court finds that the aggravating factors substantially outweigh the mitigating factors. The matter [was] submitted to the jury. They found two aggravating [factors] true[,] and the Court believes the interest of justice gives the Court the imposition of the upper term of eight years. For the reasons I stated on the record, the Court will select the upper term of eight years."

Based on our best reading of the trial court's ruling, it appears that, as prohibited by the Sixth Amendment, the trial court "actually relie[d] on improperly proven aggravating facts to 'justify' an upper term sentence." (*Lynch, supra*, 16 Cal.5th at p. 761.) Although the trial court did take into account the two aggravating factors found by the jury, the trial court never specified that it was *confining* itself to those two factors in deciding upon an upper term sentence. Instead, after noting the two factors found by the jury, the trial court stated that it was imposing the upper term sentence based on "the interest of justice" and "for the reasons I stated on the record." As we have noted, some of the items the trial court "stated on the record" were aggravating factors that were *not* found true by the jury. Specifically, the trial court noted that the crime involved sophistication and planning, that Masila had expressed no remorse, and that Masila had not taken responsibility for his actions.

A trial court violates a defendant's Sixth Amendment right to a jury trial when it relies on "unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on ha[d] been properly established." (*Lynch, supra*, 16 Cal.5th at p. 768.) Here, by not confining itself to the two aggravating factors found true by the jury, the trial court

16

imposed an upper term sentence in violation of Masila's Sixth Amendment rights.

3.    *The Error Was Not Harmless*

We may find the trial court's error to be harmless only if we conclude beyond a reasonable doubt "that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute.' " (*Wiley, supra*, 17 Cal.5th at p. 1087.)  Here, the trial court identified three unproven aggravating factors:  (1) Masila's lack of remorse; (2) Masila's lack of responsibility; and (3) that the crime involved sophistication and planning, in contrast to other similar offenses.  As we will explain, even without considering the first and second factors,[7] the trial court's error was prejudicial because we cannot conclude beyond a reasonable doubt that the jury would have found that the crime involved sophistication and planning, in contrast to other similar offenses.

---

[7]    In his reply brief, Masila contends that because he testified and disputed Jane Doe's version of events, we should not consider his lack of remorse or failure to take responsibility as valid aggravating factors.  (*People v. Holguin* (1989) 213 Cal.App.3d 1308, 1319 ["Lack of remorse may be used as a factor to aggravate . . . unless the defendant has denied guilt and the evidence of guilt is conflicting."]; *People v. Key* (1984) 153 Cal.App.3d 888, 900–901 [lack of remorse is not a valid reason to aggravate a sentence where defendant denies committing the crimes and the evidence is not overwhelming].)  Because we conclude, based on the third aggravating factor identified by the trial court, that the trial court's error was not harmless beyond a reasonable doubt, we need not, and do not, further discuss whether Masila's lack of remorse and failure to take responsibility could serve as valid aggravating factors under the particular circumstances of this case.

17

The People argue that the jury necessarily would have made a finding of sophistication and planning based on the fact that Masila waited until Jane Doe was asleep and then pulled over in a dark area and put a cover on his windshield so that he could rape her without being detected. We are not persuaded. Although a jury might have drawn that conclusion, a jury could also take the view asserted by Masila in his reply brief, that his "crime was the antithesis of 'planning and sophistication,' but instead an impulsive, unthinking reaction to [Jane] Doe falling asleep in his car." Indeed, based on the manner in which Masila committed the crime, he likely had little chance of avoiding criminal responsibility for it, as there was a strong possibility that Jane Doe would wake up at some point during the act of intercourse or even if she did not wake up until afterwards, would likely notice that something had happened to her body while she was asleep. Further, it was almost certain that law enforcement would be able to locate and arrest Masila after a complaint by Jane Doe by using documentation of her Uber ride. A jury may have concluded that because Masila was almost certain to face criminal prosecution for his action, the crime was not particularly sophisticated or well planned. Moreover, as our Supreme Court has cautioned, " ' "[t]o the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." ' " (*Id.* at p. 775.) That is the case here, as the determination of whether the crime involved sophistication and planning rests on a vague and subjective standard.

18

Accordingly, we cannot conclude beyond a reasonable doubt that the jury would have found true all of the aggravating factors upon which the court relied to conclude the upper term was justified.

In sum, based on the trial court's comments at sentencing, it appears that the trial court did not confine itself to the aggravating factors found true by the jury when deciding to impose an upper term sentence. Further, we cannot conclude that the error was harmless beyond a reasonable doubt. Accordingly, we vacate Masila's sentence, and we remand for the trial court to hold a new sentencing hearing during which it shall not consider aggravating factors as part of its analysis of whether to impose an upper term sentence unless those aggravating factors were found true by the jury.

## DISPOSITION

Masila's sentence is vacated, and this matter is remanded for resentencing. In all other respects, the judgment is affirmed.


IRION, Acting P. J.

WE CONCUR:


DATO, J.


CASTILLO, J.

19